IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JORDAN BERG,

                Plaintiff,

  v.

GWEN SCHULTZ, ETHAN HABECK,
JONATHAN KORDUCKI, JAMES KOTTKA,
MICHAEL JULSON, RICHARD SEDEVIC,
JAMEY KUSTKE, BRIAN GUSTKE, SUE NOVAK,
and LUCAS WEBER.

                Defendants.

OPINION and ORDER

20-cv-185-jdp

---

Pro se plaintiff Jordan Berg was dissatisfied with a new library policy at Columbia Correctional Institution (CCI) and decided to hold a "sit-in" in the prison's dayroom until he could speak to a captain about the new rule. He refused to comply with officers' orders to allow himself to be handcuffed and said that there would be a fight if officers touched him. He contends that the officers forced him to the ground and caused him to hit his head, punched him in the face, and tased him after he had been subdued. He brings Eighth Amendment excessive force and failure-to-intervene claims against the officers who were directly involved in the incident. He also brings claims against those officers' supervisors and against the prison's security director in his official capacity.

Defendants move for summary judgment on all of Berg's claims, except the one against defendant correctional officer Jonathan Korducki for punching Berg in the face. Dkt. 26. No reasonable jury could find that the officers' inappropriately forced Berg to the ground. But Berg's evidence and the video footage raise genuine disputes of material fact about whether

Berg's tasing was justified. I will deny defendants' motion in part. I will also amend several pretrial deadlines to and direct defendants to submit additional bodycam footage.

## UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted. The morning of September 11, 2019, Berg finished a work shift at the prison bakery. He went to the officers' station in the dayroom and asked a sergeant to confirm that Berg was on the library list for that day. The sergeant told Berg that Berg had been removed from the list, because under a new rule, certain inmates could only go to the library once per week. Berg asked the sergeant to put him back on the list and the sergeant said no. Berg asked to speak with a captain and the sergeant said no.

Berg decided to protest the new rule by sitting at a dayroom table until he could speak to a captain. Three other inmates joined Berg's "sit-in." Correctional officers began filtering into the dayroom and speaking to Berg and the other inmates. One inmate left. Berg told the officers that he wouldn't leave until he spoke to a captain. The officers told Berg and the other inmates to allow themselves to be handcuffed for the remainder of the conversation. The other two inmates complied. Berg refused.

Defendant captain Gwen Schultz entered the dayroom. She told Berg to comply with orders or he would be restrained. Berg refused. Berg said that if anyone touched him, there would be a fight. Defendant captain Michael Julson took the other two inmates out of the dayroom. Defendant correctional officers Jonathan Korducki and Ethan Habeck, and defendant sergeant James Kottka stayed at the table and talked with Berg. Defendants segreant Richard Sedevic and correctional officer Jamey Kustke were standing nearby.

The parties dispute what happened next. Berg says that he turned his body to say something to Kottka when Kottka, Korducki, and Habeck pulled him from his seat and threw him violently to the floor, causing his head to hit the wall of the officers' station. Defendants say that Berg abruptly stood up and pushed against them, so Korducki, Kottka, and Habeck forced Berg to the floor. They say that Berg's head hit the officers' station while he was struggling on the floor. Defendants provided video of the incident from the prison's dayroom camera. But the footage is too far away to show what happened immediately before Berg was tackled or to show Berg hitting his head.

The parties also dispute what happened to Berg when he was on the ground. Berg says that Korducki punched him, which Korducki denies (and defendants are not moving for summary judgment on this claim). Defendants' video evidence shows Berg bleeding heavily from his face. The parties dispute how Berg was injured. Berg says that it happened when Korducki punched him. Defendants deny that Berg was punched but don't offer a different explanation for Berg's injury.

Berg says that after he was punched, Korducki, Kottka, Habeck, Schultz, Sedevic, and Kustke had pinned Berg down. He says that they told him to put his hands behind his back, but he couldn't move his arms and stopped resisting. He says that Schultz tased him. Defendants say that Schultz tased Berg because he was resisting and assaulting officers. Bodycam video shows officers struggling on top of Berg and that an officer yelled, "stop resisting," and "tase him." Dkt. 37-4, at 00:00 (Randall bodycam). The video shows that Schultz approached Berg with a taser, pressed it into his back for several seconds, and activated it. The parties agree that after Berg was tased, officers handcuffed him, helped him to his feet, put him into a restraint chair, and took him to health services for medical attention.

3

Berg asserts that this incident was part of a pattern of misconduct by officials at the prison. He says that defendant warden Sue Novak, deputy warden Lucas Weber, and security director Brian Gustke have allowed these violent incidents to happen. The court will discuss additional facts as they are relevant to the claims below.

ANALYSIS

I granted Berg leave to proceed on claims that: (1) Korducki, Kottka, Habeck, Schultz, Sedevic, Kustke, and Julson used excessive force to subdue him or failed to intervene; (2) Novak, Weber, and Gustke turned a blind eye toward a pattern of excessive force at the prison; and (3) Berg is entitled to injunctive relief because Gustke, in his official capacity, is responsible for the policies that caused the excessive force incident.

Defendants seek summary judgment on all of Berg's claims, except for claim that Korducki punched Berg in the face. Defendants contend that: (1) the officers' actions were justified to restore discipline because Berg was noncompliant and posed a threat; (2) the officers are entitled to qualified immunity; (3) Berg has failed to establish a pattern of excessive force at the prison or that a policy at the prison contributed to the violations that Berg alleges.

For the reasons explained below, Berg can't forestall summary judgment on his claims against Kottka and Habeck for forcing Berg to the ground, or on his supervisory and official-capacity claims. But Berg has adduced sufficient evidence to go to trial on his claims that Schultz unnecessarily tased him and that Kottka, Habeck, Korducki, Sedevic, and Kustke failed to intervene.

**A. Excessive force**

I granted Berg leave to proceed on Eighth Amendment claims against Korducki, Kottka, Habeck, Schultz, Sedevic, Kustke, and Julson for using inappropriate force when they restrained Berg for protesting the new library policy. Berg's claim against Korducki for the punch will go to trial. I will grant summary judgment for defendants on Berg's claim against Julson because it is undisputed that Julson left the dayroom before the incident occurred. That leaves Berg's claims against Kottka, Habeck, Schultz, Sedevic, Kustke, and Korducki for conduct other than the punch.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To prevail on an Eighth Amendment excessive force claim against a correctional officer, a prisoner must prove that the officer applied force to "maliciously and sadistically" cause harm rather than in a good faith effort to restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). In determining whether an officer's use of force was excessive, relevant factors include why force was needed, how much force was used, the seriousness of the injury inflicted, whether the defendant perceived a threat to the safety of staff and prisoners, and whether efforts were made to temper the severity of the force. *Whitley*, 475 U.S. at 321. Prison officials' decisions are entitled to some deference, because officials must balance the need to maintain and restore discipline with the risk of injuring an inmate, and they must often act quickly and decisively. *Hudson*, 503 U.S. at 6. But prison officials may not inflict unnecessary and wanton pain on prisoners*. Id.*

The first component of Berg's claim is based on his allegation that Kottka, Habeck, and Korducki unnecessarily tackled Berg to the ground. Berg contends that he was trying to have a

civil conversation with Kottka, Habeck, and Korducki, and that they violently threw him to the ground.

When prison officials give an order and an inmate cannot be persuaded to comply, physical force may be used to compel compliance. *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir.1984); *see also Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (prison officials "must be able to handle, sometimes manhandle" inmates to maintain order in the prison environment). Here, Berg doesn't dispute that he refused to comply with officers' orders. Officers told Berg to go back to his cell, and when he didn't do that, they told him to allow himself to be handcuffed. He persistently refused to put his hands behind his back. Schultz told Berg that he could choose to follow orders or to be restrained and moved to restrictive housing. Berg said that that if officers touched him, there would be a fight. Then Berg moved suddenly. Defendants say that Berg stood up abruptly and pushed against them; Berg says that he merely turned his body to talk to Kottka. The video confirms that Berg moved suddenly, but it is too far away to tell whether Berg stood up or just turned. Dkt. 29-1 at 22:00 (dayroom video). Either way, it was reasonable for officers to perceive Berg's sudden movement to be a threat and to tackle Berg, given that he had refused to be restrained and threatened to fight the officers.

Berg contends that he hit his head on the officer's station as a result of being tackled. But he says this injury wasn't serious, and that the officers who tackled him didn't force or slam his head into the wall. An injury that occurs in the course of a prison security measure doesn't amount to excessive force. *Guitron*, 675 F.3d at 1045.

The situation was different after Berg was on the ground. Berg contends that he was punched, and defendants do not move for summary judgment on that claim. Berg also contends

that Schultz tased him after he was subdued. The use of a taser against an aggressive, disruptive, or physically threatening inmate may be justified, but not in all situations. *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *Dye v. Lomen*, 40 Fed. Appx. 993, 995–96 (7th Cir.2002). What matters is whether the facts give rise to an inference that the prison official used the taser maliciously and unnecessarily. *Lewis*, 581 F.3d at 477.

Defendants point to Schultz's declaration and incident reports that state that Berg refused to put his hands behind his back and lay on his stomach, resisted officers, and assaulted officers while he was struggling on the floor. The declaration and report also say that Schultz warned Berg to submit, and yet Berg still wouldn't comply. Berg concedes that he initially fought back and tried to push officers off him when he was on the ground. But he testified in his deposition and contends in his summary judgment materials that before he was tased, he was unable to follow orders to put his hands behind his back because he was pinned down by the officers on top of him. He says that he repeatedly yelled to the officers that he couldn't move his arms and had stopped resisting but was tased anyway. Dkt. 25 (Berg. Dep. 21:20–22:6.).

Video evidence from an officer's bodycam shows the tasing. Dkt. 37-4 (Randall bodycam). The video begins with Berg already on the ground. *Id.* at 00:00. At first, the view of Berg is blocked by other officers, so it isn't possible to see what Berg is doing. The audio is inaudible, except that an officer said, "stop resisting," and "tase him." *Id.* Schultz then approached Berg with a taser. Berg was on his side, facing and almost pressed up against the officers' station with several officers on top of him. He was yelling but not moving his arms. Schultz said, "stop resisting, I have a taser." *Id.*, at 00:09. Two officers held Berg's head down

7

and one officer kneeled on Berg's legs. Schultz held the taser into Berg's back. Berg moved his head slightly, but his body otherwise was still. Schultz activated the taser.

If Berg's version of the events is accepted, Berg was not actively resisting at the time that he was tased. The officers had gained control of him, he had "submitted to authority," and he did not pose a risk. *See Dockery v. Blackburn*, 911 F.3d 458, 468 (7th Cir. 2018) (considering the use of a taser in the context of the Fourth Amendment). A reasonable jury could conclude that Schultz acted maliciously and inappropriately when she tased Berg.

Korducki, Kottka, Habeck, Sedevic, and Kustke were restraining Berg on the ground when Schultz tased him. Bystander officers may be held liable for failing to stop a fellow officer's use of excessive force if they had reason to know that the fellow officer was violating the constitution and they had a "realistic opportunity" to intervene to prevent the violation. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). A realistic opportunity means an ability to tell the fellow officer to stop. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014).

Korducki, Kottka, Habeck, Sedevic, and Kustke had enough time to stop Schultz from tasing Berg. A few seconds after one of the officers yelled, "tase him," Schultz yelled that she had a taser as she walked several steps toward Berg. She pressed the taser against Berg's back for several seconds before she activated it. *See Est. of DiPiazza v. City of Madison,* No. 16-cv-60-wmc, 2017 WL 1337313, at *10 (W.D. Wis. Apr. 11, 2017) (denying summary judgment on failure-to-intervene claim when defendant had "a few seconds" to tell other officer not to shoot the decedent); *Pullen v. House,* 88 F. Supp. 3d 927, 944–45 (W.D. Wis. 2015) (denying summary judgment on failure-to-intervene claim when defendant saw other officer remove her taser before deploying it). A reasonable jury could find that Korducki, Kottka, Habeck, Sedevic, and Kustke knew that tasing was unnecessary and yet failed to intervene in Schultz's tasing.

The court will grant defendants' motion for summary judgment on Berg's excessive force claims against Kottka and Habeck for tackling Berg. The court will deny summary judgment on Berg's excessive force claims against Schultz for tasing Berg and against Kottka, Habeck, Korducki, Sedevic, and Kustke for failing to intervene.

## B. Qualified immunity

Defendants contend that they are entitled to qualified immunity on Berg's excessive force claims. That doctrine shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). This standard doesn't require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

It is clearly established that the Eighth Amendment prohibits prison staff from inflicting pain without a legitimate penological purpose, and from deliberately failing to prevent fellow staff members from doing so. *Wilborn v. Ealey*, 881 F.3d 998, 1001 (7th Cir. 2018). Whether Berg was still resisting when Schultz tased him is genuinely disputed. If a jury accepted Berg's version of events, it could infer that Schultz acted without a valid penological reason when she tased him, and that Kottka, Habeck, Korducki, Sedevic, and Kustke deliberately failed to intervene to stop the needless tasing. The officers' claim of immunity depends on disputed facts: so long as the evidence would support a reasonable jury verdict that defendants acted for the purpose of causing harm, defendants cannot establish that they are entitled to qualified immunity. *See Turner v. Rataczak*, 28 F. Supp. 3d 818, 824 (W.D. Wis. 2014). Defendants are not entitled to summary judgment on the grounds of qualified immunity.

**C. Claims against supervisors**

Berg brings claims against Novak, Weber, and Gustke, all of whom are supervisory officials, for turning a blind eye toward a pattern of using excessive force against inmates at CCI. High-level prison staff cannot be liable for constitutional claims in their individual capacities under a theory of respondeat superior. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). But supervisors can be held liable for unconstitutional conduct faced by prisoners if they facilitated, approved, condoned, or turned a blind eye toward that conduct. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Berg discusses three examples of past excessive force incidents at CCI in his summary judgment materials. First, he mentions a CCI staff member named Andrew Jezuit who was criminally charged for using excessive force at CCI and who no longer works there. Second, he cites *Barnett v. Goldsmith, et.al*, 20-cv-298-wmc, a case involving excessive force at CCI that was brought and settled in this court. Berg says that the defendant in that case, Goldsmith, was also criminally charged. Third, he discusses allegations of excessive force used at the Lincoln Hills juvenile detention center while Gustke was the security director there. Two excessive force incidents over two years at CCI are not sufficient to establish a pattern, and the Lincoln Hills example involves a different institution. And Berg hasn't shown that any of these instances involved inmates who were tased or punched. The court will grant defendants' motion for summary judgment on Berg's claims against the supervisors.

**D. Official-capacity claims**

I allowed Berg to proceed on official capacity claims against Gustke for injunctive relief. To prevail on an official-capacity claim, a prisoner must show that an institutional policy or custom contributed to the alleged constitutional violation. *Collins Bey v. Haines*, No. 13-cv-618-

10

jdp, 2018 WL 3998032, at *2 (W.D. Wis. Aug. 21, 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Berg doesn't address this claim in his summary judgment materials. He doesn't identify a specific policy or custom that contributed to the alleged excessive force incident apart from noting the instances of excessive force at CCI that are discussed above. Berg doesn't specify what injunctive relief he seeks.

Berg's official-capacity claim is moot in any case, because he is no longer incarcerated at CCI. Official-capacity claims are claims for prospective relief, and to obtain prospective relief, there must be a risk that the defendant will violate the plaintiff's rights again. *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 395 (7th Cir. 2019). When a prisoner's claim relates to events at a particular prison, the general rule is that any request for prospective relief becomes moot if a prisoner is transferred, because it is unlikely that the prisoner will be subjected to the same conditions again. *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009); *Maddox v. Love*, 655 F.3d 709, 716–17 (7th Cir. 2011). The events that gave rise to Berg's claim occurred at CCI. Berg was transferred to Redgranite Correctional Institution in February 2021, and to Green Bay Correctional Institution in August 2021. Berg hasn't shown a realistic probability that he will be incarcerated at CCI in the future, so any injunctive relief that the court could grant would be speculative. The court will grant defendants' motion for summary judgment on Berg's official-capacity claim.

### E. Scope of video evidence

Berg contends that defendants withheld relevant video evidence from the record. Dkt. 40, ¶¶ 44, 50, 51. I previously addressed this issue when Berg moved to compel video evidence that he said was missing from the record. Defendants didn't oppose Berg's request, so the court directed defendants to file the video with the court. Dkt. 35. Defendants submitted

11

bodycam footage from three staff members: Kophamer, Randall, and Schultz. Dkt. 37. Kophamer's begins at 10:00 a.m, Randall's at 10:01 a.m., and Schultz's at 10:01 a.m. Kophamer wasn't involved in the use of force incident, so his video is not relevant. Randall and Schultz were both involved. A review of their bodycam videos reveals a problem: the first minute of the alleged excessive force incident are missing. The videos begin with Berg already on the ground and do not include the period of time in which Berg hit his head and Korducki allegedly punched Berg. Defendants don't explain why the videos are incomplete, and it is unlikely that Randall and Schultz both turned their bodycams on at exactly 10:01 a.m. If defendants are in possession of video evidence of the incident that they didn't submit, they are directed to file it with the court. If the videos are not available, they are directed to explain why.

CONCLUSION

The court will deny summary judgment on Berg's claims that Schultz used excessive force when she tased Berg, and that Kottka, Habeck, Korducki, Sedevic, and Kustke failed to intervene. The court will grant defendants' motion for summary judgment on Berg's claims against Kottka and Habeck for tackling Berg to the ground, and on Berg's claims against Novak, Weber, and Gustke.

I will modify the pretrial schedule as follows. Pretrial submissions and all motions in limine will be due on October 8; objections will be due on October 15. The final pretrial conference date of October 22 at 10:00 a.m. will remain in place. Jury selection and trial remain set for November 1 at 8:30 a.m. The court will follow this opinion with a trial preparation

order. Defendants are directed to submit additional bodycam video of the alleged excessive force incident or explain why the video is unavailable pursuant to the order below.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 26, is DENIED with respect to plaintiff Jordan Berg's excessive force and failure-to-intervene claims against defendants Kottka, Habeck, Korducki, Sedevic, Kustke, and Schultz.

2. Defendants' motion for summary judgment, Dkt. 26, is GRANTED with respect to Berg's claims against Julson, Novak, Weber, and Gustke.

3. Defendants are ordered to submit complete bodycam video evidence by October 1, 2021.

4. Defendants Julson, Novak, Weber, and Gustke are DISMISSED.

5. Pretrial submissions and motions in limine deadlines are amended as discussed above.

Entered September 21, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge